[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11686

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LEONARD M. GREEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cr-00005-HES-LLL-1

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Defendant-Appellant Leonard Green appeals his 180-month imprisonment sentence for possession with intent to distribute methamphetamine and possession of a firearm by a convicted felon. After a thorough review of the record, we affirm the district court's sentence.

**I.**

In May 2021, Homeland Security Investigations (HSI) agents in California learned of an attempt by a Mexican drug-trafficking organization to distribute methamphetamine in Florida. Undercover HSI agents mailed a parcel containing 2.3167 kilograms of methamphetamine—as well as a transmitter to alert agents when the package was opened—to Green's residence in Jacksonville, Florida. HSI obtained an anticipatory search warrant for Green's residence and observed an undercover United States Postal Inspection Service investigator deliver the parcel to his address. After watching Green bring the parcel inside and being alerted via the transmitter that it had been opened, agents entered the residence and executed the search warrant.[1] Green admitted during the search that he knew a parcel containing controlled substances would arrive at his house that week, and that a man named Ronald

---

[1] When the agents entered the home, Green kicked the package under his bed. A 9mm handgun was found next to his bed.

Thomas, Jr., who goes by Tony, would later retrieve it and pay him $500.  Green explained that he routinely sold marijuana for Tony, but he also knew Tony sold methamphetamine.

In January 2022, a grand jury indicted Green for possession with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count I), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count II).  Green subsequently pled guilty to both counts, and the district court accepted his guilty pleas.

In determining his recommended sentencing guidelines, Green's probation officer grouped Counts I and II together pursuant to U.S.S.G. § 3D1.2(c).  The probation officer prepared a presentence investigation report (PSI) which considered the amount of methamphetamine in the parcel, as well as Green's possession of a firearm, his acceptance of responsibility, and his criminal history.  The resulting guideline range was 235–293 months' imprisonment, to which Green objected, advocating for a sentence of 120 months.  As relevant to this appeal, Green argued in a sentencing memorandum that his involvement in the methamphetamine trafficking scheme was minimal, as he neither transported a controlled substance nor exercised decision-making authority, and only minimally benefitted from the criminal activity.  At the sentencing hearing, the district court stated that it had reviewed the PSI and sentencing memorandum and heard Green's reasserted argument that he qualified for a minimal or minor participant

reduction.  The government responded that Green did not play a minimal or minor role.  But for his residence being used as a "drop off"—a "safe place" to hold drugs until Tony was able to pick them up—the methamphetamine would have never made it to Florida. And while Green primarily dealt marijuana, he knew Tony "dealt heavily in the methamphetamine game as well," indicating he knew there was a possibility he could receive other drugs.

The court overruled Green's objections and adopted the undisputed facts and guideline applications in the PSI, ultimately sentencing Green to a 180-month sentence to run concurrent to his preexisting state sentence.  Green timely appealed.  He argues that his sentence is procedurally unreasonable because the district court declined to grant him a mitigating-role reduction.

## II.

We review the district court's determination that Green did not qualify for a mitigating-role reduction for clear error.  *United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).  The district court has "considerable discretion in making this fact-intensive determination," *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002), and we will not disturb its findings unless "left with a definite and firm conviction that a mistake has been committed," *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quotations omitted).

## III.

"The sentence imposed for a particular offense is based upon the applicable sentencing offense levels set forth in Chapter Two

(Offense Conduct) of the Sentencing Guidelines." *De Varon*, 175 F.3d at 938–39; *see* U.S.S.G. § 3B1.2. The guidelines provide that "a defendant may receive a two to four level reduction in his base offense level where his role in the offense can be described as minimal or minor." *De Varon*, 175 F.3d at 939 (cleaned up); U.S.S.G. § 3B1.2. The defendant "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *De Varon*, 175 F.3d at 939.

In determining whether the defendant played a minimal or minor role in the criminal scheme, the district court conducts a two-part inquiry. *Id.* at 940–45. First, it looks to "the defendant's role in the relevant conduct for which he has been held accountable at sentencing," and then to "his role as compared to that of other participants in his relevant conduct." *United States v. Cabezas-Montano*, 949 F.3d 567, 606 (11th Cir. 2020) (quotations omitted and alteration adopted). To assist courts in this determination, the Sentencing Guidelines provide a non-exhaustive list of factors, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).

A district court "must consider all of [the § 3B1.2] factors to the extent applicable, and it commits legal error in making a minor role decision based solely on one factor." *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (internal quotations omitted). But in making this determination, "the sentencing judge has no duty to make any specific subsidiary factual findings." *De Varon*, 175 F.3d at 939. "So long as the district court's decision is supported by the record and the court clearly resolves any disputed factual issues, a simple statement of the district court's conclusion is sufficient." *Id.* (emphasis omitted).

## IV.

The district court's determination that Green did not play a minimal or minor role in the methamphetamine distribution scheme was not clearly erroneous. While the court did not explain its reasoning for declining to award him a mitigating-role adjustment, it was not required to make specific factual determinations beyond its ultimate conclusion, as the decision was clearly

supported by the record and there were no factual issues in dispute. *De Varon*, 175 F.3d at 939–40.

First, we consider Green's role in the crime. The uncontested PSI indicates that he knowingly received over two kilograms of methamphetamine—and he was held accountable only for that conduct, not any marijuana he received or sold prior to this incident. Green had received packages of marijuana for Tony on numerous occasions, and stated that he was aware Tony also sold methamphetamine. The record demonstrates that the probation officer and the district court used this information as probative evidence of Green's knowledge, culpability, and role in Tony's criminal enterprise and the instant methamphetamine scheme. *See* U.S.S.G. § 3B1.2 cmt. n.3(C). Moreover, Green was the only person responsible for receiving these drugs. While Green's performance of an "indispensable role in the criminal activity is not *determinative*," *id.* (emphasis added), his role in safely storing multiple shipments of drugs indicates he was not a minimal or minor participant in the trafficking scheme. Additionally, Green received $500 for retrieving the package on Tony's behalf, showing he stood to gain at least some pecuniary benefit from the transaction. *See id.*

Turning now to Green's role compared to that of other participants. The government identified three participants in the criminal activity: (1) the sender, (2) Green, and (3) Tony. Green failed to introduce sufficient evidence comparing his role to the sender and Tony, and therefore did not meet his burden that his role was minor or minimal compared to theirs. And while the record

demonstrates that he played a *lesser* role than Tony, this does not automatically entitle him to a role reduction, as "it is possible that [no participants] are minor or minimal." *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) (quotations omitted). While Green's role in the trafficking scheme was less involved than that of others, it was involved enough to make him more than a minor or minimal participant.

## V.

For the reasons given above, the district court did not err in denying Green a mitigating-role reduction.

**AFFIRMED**.